**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KYNEESHA A. HARP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-1199-GBW-SRF |
| | ) | |
| COMPUTERSHARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Pending before the court in this employment discrimination action is the motion of defendant Computershare, Inc. ("Defendant") to dismiss the corrected amended complaint (the "CAC")[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 19)[2] For the following reasons, I recommend that the court GRANT-IN-PART Defendant's motion to dismiss.

## I. BACKGROUND

The CAC alleges that, on March 11, 2024, plaintiff Kyneesha A. Harp ("Plaintiff") began working for Defendant as an account executive in Defendant's Entity Solutions division. (D.I. 17-1 at ¶ 9) When Plaintiff suffered a miscarriage in July of 2024, she requested time off and

---

[1] On January 22, 2026, Plaintiff moved for leave to file a first amended complaint, and Defendant indicated it did not contest the proposed amendment. (D.I. 15; D.I. 16) Plaintiff then filed a corrected amended complaint on February 24, 2026. (D.I. 17-1) Defendant again represented that it did not contest Plaintiff's corrected amended complaint. (D.I. 18) In the briefing on Defendant's motion to dismiss, Defendant represents that it "accepts the well-pled factual allegations in the Corrected Amended Complaint as true" for purposes of the motion. (D.I. 20 at 2 n.1) However, Defendant cites to the January 22, 2026 version of the pleading in its summary of the factual background and later suggests Plaintiff "attempt[ed] to slip additional factual allegations in the pleadings after Defendant noted its lack of objection to the Amended Complaint." (D.I. 20 at 2-3, 6 n.2) The court considers the CAC to be the operative pleading in the instant action based on Defendant's agreement not to contest the CAC. (D.I. 18)

[2] The briefing associated with the pending motion to dismiss is found at D.I. 20, D.I. 22, D.I. 23, and D.I. 24.

inquired about short-term disability and medical leave options. (*Id.* at ¶ 10) Plaintiff's manager discouraged her from pursuing formal leave and instead recommended that she use paid time off ("PTO"). (*Id.*)

In February of 2025, Plaintiff notified her manager that she was pregnant and provided documentation of certain medical restrictions. (*Id.* at ¶ 11) Plaintiff suffered a second miscarriage on March 31, 2025. (*Id.* at ¶ 12) On April 2, 2025, Plaintiff's therapist submitted documentation to Defendant confirming Plaintiff's need for extended leave. (*Id.* at ¶ 13) Plaintiff's manager recommended that Plaintiff use "gifted" PTO days instead of providing her with information on FMLA, notices of rights, or accommodations. (*Id.* at ¶ 14)

On April 10, 2025, Plaintiff mistakenly sent a text message from her work phone that Defendant interpreted to be drug-related.[3] (*Id.* at ¶ 15) Plaintiff immediately contacted Human Resources to clarify the message was sent in error and attributed the error to her struggles caused by her miscarriage. (*Id.*) Defendant terminated Plaintiff's employment on April 14, 2025, citing the text message she sent on April 10, 2025 as the reason for her termination.[4] (*Id.* at ¶ 16)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue letter on August 26, 2025. (*Id.* at

---

[3] Defendant represents that the text messages said, "I need coke," "I need coke right now," and "How much???" and cites to Exhibit A to its opening brief. (D.I. 20 at 3) There are no exhibits attached to Defendant's motion or opening brief. Plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), which was attached as an exhibit to the original complaint, indicates that the text message was sent to a client of Defendant. (D.I. 2-1 at 1)

[4] Plaintiff includes allegations and exhibits in her answering brief that were not contained or referenced in the CAC. (D.I. 22; D.I. 23) "Plaintiff may not amend h[er] complaint through h[er] opposition brief, and these new facts may not be considered by the Court on the instant motion to dismiss." *Schiavo v. Carney*, 548 F. Supp. 3d 437, 441 n.3 (D. Del. 2021) (citing *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

¶¶ 5-8) Plaintiff brought the instant suit on September 26, 2025. (D.I. 2) In the CAC, Plaintiff maintains that she was terminated due to her pregnancy, miscarriages, and leave and accommodation requests. (D.I. 17-1 at ¶ 19) On this basis, the amended complaint asserts the following causes of action: (1) Count I asserts a cause of action for Family Medical Leave Act ("FMLA") interference under 29 U.S.C. § 2615(a)(1); (2) Count II asserts a claim for FMLA retaliation under 29 U.S.C. § 2615(a)(2); (3) Count III asserts a cause of action under the Americans with Disabilities Act ("ADA") for failure to accommodate under 42 U.S.C. § 12112(b)(5); (4) Count IV asserts a claim under the Pregnant Workers Fairness Act ("PWFA") pursuant to 42 U.S.C. § 2000gg; and (5) Count V asserts a claim for discrimination based on sex and pregnancy under Title VII, 42 U.S.C. § 2000e. (*Id.* at ¶¶ 20-28)

## II. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations

allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## III. ANALYSIS

### A. Count I: FMLA Interference

To plead a plausible claim for FMLA interference, a plaintiff must allege that: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014). Defendant challenges the first and fifth requirements of Plaintiff's claim for FMLA interference. (D.I. 20 at 5-7; D.I. 24 at 4 & n. 1)

On its face, the CAC establishes that Plaintiff was not an "eligible employee" within the meaning of the FMLA when she suffered her first miscarriage in July of 2024. An "eligible employee" is one who has been employed for at least 12 months and has provided at least 1,250

hours of service during the previous 12-month period. 29 U.S.C. § 2611(2)(B). The CAC alleges that Plaintiff began working for Defendant on March 11, 2024, and she suffered her first miscarriage approximately four months later in July of 2024. (D.I. 17-1 at ¶¶ 9, 10) Therefore, Plaintiff did not meet the 12-month requirement to qualify for FMLA at the time of her first miscarriage.

Viewing the pleaded allegations in the light most favorable to Plaintiff at this early stage of the case, it is reasonable to infer that Plaintiff was an "eligible employee" at the time of her second miscarriage on March 31, 2025. Plaintiff was employed by Defendant for over a year at the time of her second miscarriage, and the CAC expressly alleges that "Plaintiff was employed by Defendant for more than 12 months and worked in excess of 1,250 hours during the 12-month period preceding her termination." (D.I. 17-1 at ¶ 9(a)) However, the CAC does not plausibly allege that Plaintiff was denied FMLA benefits after her second miscarriage.

"To adequately allege an interference claim, a complaint must plead not only that the plaintiff's request for FMLA was improperly denied, but that she was 'harmed as a result of the violation.'" *Murray v. City of New York*, 2024 WL 3553266, at *13 (S.D.N.Y. July 26, 2024) (quoting *Smith v. Westchester County*, 769 F. Supp. 2d 448, 467 (S.D.N.Y. 2011)). The CAC alleges that Plaintiff's manager "gifted" her PTO days instead of providing FMLA leave following Plaintiff's second miscarriage. (D.I. 17-1 at ¶ 14) Plaintiff does not suggest that her use of paid personal leave was inferior to FMLA leave. Consequently, I recommend that the court GRANT Defendant's motion to dismiss Count I of the CAC for FMLA interference. *See Blodgett v. 22 S. St. Operations, LLC*, 828 F. App'x 1, 5 (2d Cir. 2020) (holding that the plaintiff could not show she was denied an FMLA benefit where she received all the leave requested and did not show that her personal leave was inferior to FMLA leave); *see also Majewski v. Fischi*,

372 F. App'x 300, 305-06 (3d Cir. 2010) (noting that "the FMLA states that an employer 'may require' an eligible employee to use accrued, paid leave prior to commencement of the twelve-week FMLA leave.") (citing 29 U.S.C. § 2612(d)(2)(B)).

**B. Counts III & IV: Failure to Accommodate under the ADA and PWFA**

Next, Defendant contends that the CAC does not allege facts supporting the denial of a reasonable accommodation under either the ADA or the PWFA. (D.I. 20 at 7-9) To state a claim for failure to accommodate under the ADA, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (internal quotations and citations omitted). The PWFA similarly requires pleading that (1) the plaintiff is a qualified individual; (2) the employer was aware of her limitation; and (3) the employer failed to reasonably accommodate the limitation. *Ventura De Brown v. Centers Lab NJ LLC*, 2026 WL 1329713, at *5 (D.N.J. May 13, 2026) (internal quotations and citations omitted); *see also Etkins v. Dive N. Hills, LLC*, 2026 WL 1487445, at *8 (W.D. Pa. May 28, 2026) (noting that courts treat PWFA claims for failure to accommodate "like analogous claims under the ADA.").

The CAC states that Plaintiff requested time off and sought counseling support through the Employee Assistance Program after her first miscarriage in 2024. (D.I. 17-1 at ¶ 10) The CAC further alleges that, in February of 2025, Plaintiff notified Defendant of medical restrictions due to her second pregnancy. (*Id.* at ¶ 11) The CAC does not indicate that Defendant failed to accommodate Plaintiff's medical restrictions on those occasions. After her second miscarriage in March of 2025, Plaintiff's psychologist documented Plaintiff's need for extended leave. (*Id.* at ¶ 13) The CAC alleges that Defendant could have implemented protected

medical leave or a temporary modification of Plaintiff's duties. (*Id.* at ¶ 14(b)) But the CAC acknowledges that Plaintiff's manager offered her "gifted" PTO days to cover her requested leave. (*Id.* at ¶ 14) Plaintiff does not allege that she was forced to work despite medical restrictions or that she was denied therapy. Because the CAC does not identify a requested accommodation that was not satisfied by Defendant, I recommend that the court DISMISS without prejudice Counts III and IV of the CAC.

**C. Count II: FMLA Retaliation**

To state a claim for retaliation under the FMLA, the complaint must include facts sufficient to show that: (1) the plaintiff invoked her right to FMLA-qualifying leave; (2) she suffered an adverse employment decision; and (3) the adverse action was causally related to her invocation of rights under the FMLA. *Ross*, 755 F.3d at 193. "The Third Circuit has articulated two factors relevant to the analysis of establishing a causal link between the adverse employment action and the FMLA leave: (1) showing temporal proximity between the protected activity and the adverse action or (2) evidence of ongoing antagonism toward the employee." *Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 662 (E.D. Pa. 2021) (citing *Capps v. Mondelez Global LLC*, 147 F. Supp. 3d 327, 336 (E.D. Pa. 2015), *aff'd*, *Capps*, 847 F.3d 144, 155 (3d Cir. 2017)). Defendant contends that the CAC fails to establish a causal connection between Plaintiff's termination and her invocation of rights under the FMLA due to her second miscarriage. (D.I. 17-1 at 10-11)

At this early stage of the proceedings, the pleaded allegations sufficiently support a causal connection between Plaintiff's invocation of her FMLA rights on April 2, 2025 and the termination of her employment on April 14, 2025. The temporal proximity between an employee's protected activity and the adverse employment action may satisfy the causal

connection when the timing is "unusually suggestive of retaliatory motive." *Blakney v. City of Phila.*, 559 F. App'x 183, 185-86 (3d Cir. 2014) (internal citations and quotations omitted). Although there is no bright line rule, the Third Circuit has indicated that a temporal proximity greater than ten days is not enough, by itself, to support an inference of causation. *Id.*

The pleaded allegations offer little beyond the timing of Plaintiff's termination to support an inference of retaliatory motive. Rather, the CAC alleges that Plaintiff's manager offered her "gifted" PTO days so Plaintiff would be paid during her leave of absence. (D.I. 17-1 at ¶ 14) The CAC also acknowledges that Plaintiff mistakenly sent an inappropriate text message from her work phone on April 10, 2025, and Defendant cited the text message as the reason for Plaintiff's termination. (*Id.* at ¶¶ 15-16) Persuasive authority holds that "there is no causal connection between a protected act and an adverse action, where the adverse action was caused by intervening acts of misconduct." *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016). Nonetheless, "[t]his case is at the pleading, not summary judgment, stage" and Plaintiff "need only allege, not prove, a cause of action[.]" *Johnson v. Waterlogic E., LLC*, C.A. No. 16-672-RGA, 2017 WL 3314004, at *3 (D. Del. Aug. 3, 2017). Consequently, I recommend that the court DENY Defendant's motion to dismiss Count II of the CAC and permit discovery to proceed on the circumstances surrounding Plaintiff's termination.

**D. Count V: Title VII Sex / Pregnancy Discrimination**

The CAC also claims that the termination of Plaintiff's employment during her medical leave period was the result of discrimination based on Plaintiff's sex and pregnancy-related condition. (D.I. 17-1 at ¶ 28) Employment discrimination based on a person's sex is prohibited under Title VII. 42 U.S.C. § 2000e–2 (a). "The Pregnancy Discrimination Act ('PDA') explicitly provides that, for the purposes of Title VII, 'on the basis of sex,' includes

discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions.' " *Butz v. Lawns Unlimited Ltd.*, 568 F. Supp. 2d 468, 475 (D. Del. 2008) (citations omitted). "The prohibition is breached whenever an employee's pregnancy or related medical condition is a motivating factor for the employer's adverse employment decision." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008) (internal quotations and citations omitted). The requirements for a *prima facie* case of pregnancy discrimination under Title VII mirror those of an FMLA retaliation claim: (1) the employer must have actual knowledge of an employee's pregnancy; (2) the plaintiff must be qualified for her job; (3) the plaintiff must have suffered an adverse employment action; and (4) there is a nexus between the plaintiff's pregnancy and the adverse employment action. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365-66 (3d Cir. 2008).

Similar to FMLA retaliation, "an inference of discrimination can be made based upon the temporal proximity between the pregnancy and the adverse act." *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 669 (E.D. Pa. 2016) (citing *Leboon v. Lancaster Jewish Cty. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007)). Consequently, I recommend that the court DENY Defendant's motion to dismiss Count V of the CAC for the reasons set forth at Section III.C, *supra*.

## IV. CONCLUSION

For the reasons discussed above, I recommend that the court GRANT-IN-PART the pending motion to dismiss. (D.I. 19) Specifically, I recommend that the court GRANT the motion to dismiss Counts I, III, and IV and DISMISS those claims without prejudice. I recommend that the court DENY the motion to dismiss Counts II and V of the CAC.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: October 21, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE